**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

JASON J. PATTERSON,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant.

Case No. 09-CV-188-GKF-FHM

**REPORT AND RECOMMENDATION**

Plaintiff, Jason J. Patterson, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for Report and Recommendation.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is

---

[1] Plaintiff's March 10, 2006, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held August 1, 2008. By decision dated September 15, 2008, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on February 4, 2009. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 35 years old at the time of the hearing. He has a General Equivalency Diploma and formerly worked as accounting clerk and motel clerk. He claims to have been unable to work since January 1, 2000 as a result of obesity, back pain, depression, and anxiety. The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform the full range of sedentary work except for performing simple, repetitive tasks, and having only incidental contact with the public. [Dkt. 9-3, p. 19]. Although this RFC precludes return to his past relevant work, based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with his limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Claims

Plaintiff asserts that the ALJ's determination is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ: erred in determining that Plaintiff does not meet a Listing; failed to include all of Plaintiff's limitations in the RFC; and made an improper credibility determination.

The undersigned finds that the record contains substantial evidence supporting the ALJ's denial of benefits in this case, and that the ALJ applied the correct standards in evaluating the evidence, therefore the undersigned RECOMMENDS that the Commissioner's denial of benefits be AFFIRMED.

### Discussion

### Analysis of Listings of Impairments

The Listings of Impairments (Listings) describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App.1. It is well established that *all* of the specified medical criteria must be matched to meet a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988). It is Plaintiff's burden to show that his impairment is equivalent to a Listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). In addition, the determination whether an impairment meets Listing criteria is based solely on medical findings. *Kemp v. Bowen,* 816 F.2d 1469, 1473 (10th Cir. 1987); 20 C.F.R. §§ 416.925-26. At step three of the sequential analysis, the ALJ is required to discuss the evidence and the reasons for

determining that Plaintiff is not disabled at step three. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff argues that the ALJ erred in determining that Plaintiff does not have an impairment that meets a Listing. Plaintiff claims that the ALJ's finding of "no evidence of nerve root compression with motor loss, atrophy with sensory or reflex loss," [Dkt. 9-3, p.15], as required to meet Listing 1.04 (Disorders of the Spine) ignores a radiology report which demonstrated some spine pathology. There is no error in the ALJ's conclusion concerning Listing 1.04. Section A of Listing 1.04 requires medical documentation of the functional limitations of motor loss and atrophy with sensory or reflex loss. Plaintiff has not pointed to any evidence in the record of those limitations and the undersigned did not find any. Contrary to Plaintiff's assertion, recorded complaints or findings of radiating pain are not sufficient to meet the listing criteria.

Citing *Henrie v. U.S. Dept. of Health and Human Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1997), Plaintiff asserts the medical record needed further development in regard to his back problems. However, Plaintiff did not point to any factual basis to support that argument. Further, the *Henrie* case dealt with the need for development of the record with respect to the physical and mental demands of past relevant work, which is not at issue in this case.

Plaintiff also argues that he has met the Listing criteria for § 12.04 (affective disorders) and § 12.06 (anxiety related disorders). In addition to other more specific criteria, these Listings require a showing of at least two of the following, "B" criteria:

     1. Marked restrictions of activities of daily living; or
     2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. According to Plaintiff, since the record contains evidence of anhedonia, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating, and thoughts of suicide, the above-cited B criteria are also met. The findings cited by Plaintiff relate to the A criteria. The B criteria must be established in addition to the A criteria as the categories serve different purposes in the Listing analysis for mental impairments. The A criteria "substantiate medically the presence of a particular mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 A. [emphasis supplied]. The B criteria "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id*. [emphasis supplied]. The functional limitations described in the B criteria must be the result of the mental disorder described in the A criteria. *Id*. Plaintiff has not pointed to evidence in the record demonstrating marked impairment in the activities described by the B criteria and the undersigned has found none. There is, therefore, no basis for finding error in the ALJ's Listing analysis.

## RFC Determination

Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ relied on the report of consultative examiner Dr. Boyd regarding the physical limitations and for mental limitations relied on only some of the reports in the record. The undersigned finds the ALJ's RFC determination is supported by substantial evidence and that the correct analysis was applied.

5

Contrary to Plaintiff's assertion, the ALJ did not ignore the medical reports of back pain. The ALJ referred to a March 28, 2006, examination at Exhibit 2F where it was observed Plaintiff had a positive straight leg raising in the right leg and negative in the left leg. The diagnoses were obesity, left low back pain, and left sciatica. [Dkt. 9-3, p. 21; Dkt. 9-10, p. 14]. The ALJ also noted an April 3, 2006, examination at Exhibit 1F where Plaintiff was diagnosed with acute chronic back pain, had reduced forward flexion, and pain of "3" on a 1-10 pain scale. [Dkt. 9-3, p. 20; Dkt. 9-9, p. 4]. Except for a report of reduced forward flexion, the medical reports do not contain information concerning functional limitations resulting from the back pain. However, limiting Plaintiff to the performance of sedentary work credited Plaintiff's complaints of back and leg pain.

Plaintiff's complaint that the ALJ failed to discuss the Claremore Indian Hospital mental health records is not well taken. The ALJ noted that evaluations took place in October and November 2005, that the records reflected "Chief Complaint Suppressed for Confidentiality," and that a mood disorder was diagnosed. [Dkt. 9-3, p. 20; Dkt. 9-9, p. 27-30]. Although there are other mental health records from Claremore Indian Hospital, they contain no more detail than the ones cited. It was therefore not error to fail to mention them.

Plaintiff was treated on an out-patient basis at Grand Lake Mental Health by Raymond Teel, M.A., L.P.C. and Katherine Reudy, B.S., P.S.R.S. The ALJ stated he gave "significantly less weight" to their opinions than the opinions of consultative examiners Dr. Lukens and Dr. Gordon, as follows:

> As to the claimant's mental impairments, the evidence shows mostly the prescription of medicines for the alleviation of his symptoms. These medicines have been changed over time due to the claimant's statements that they were not working. The claimant's mental evaluations must be considered and weighed in accordance with 20 C.F.R. § 404.1513, 404.1527, 416.913, and 416.927. The opinions of Ms. Reudy and Mr. Teel are not acceptable medical sources and they are given significantly less weight that [sic] the opinions of Dr. Lukens and Dr. Gordon. The opinions of Dr. Lukens and Gordon show that the claimant was making significant improvement. The opinions of Ms. Reudy and Mr. Teel are more current; however, they are not consistent with the medical opinions of Dr. Lukens and Gordon and they are not entitled to as much weight in determining the claimant's mental status. The medical records from the hospitals visited by the claimant do not show any specific treatment for his mental impairments but they do show a diagnosis of his mental impairments.

[Dkt. 9-3, p. 22-23].

Plaintiff, citing *Frey v. Brown*, 816 F.2d 508, 513 (10th Cir. 1987), asserts that the decision should be reversed because the ALJ failed to provide legitimate and specific reasons why Teel and Reudy are not acceptable medical sources. The *Frey* case deals with the rejection of a treating physician's opinion. Neither Teel nor Reudy are treating physicians, consequently the rule discussed in the *Frey* case does not apply to them or to this case because no treating physician's opinion was rejected.

The phrase "acceptable medical source" is a term of art. According to the regulations, only those medical sources listed in the regulations as "acceptable medical sources" (licensed physicians, optometrists, podiatrists, and qualified speech-language pathologists) can establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Medical opinions are also specifically defined by the

regulations. They are statements "that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § § 404.1527(a)(2); 416.913(a)(2). Medical opinions are weighed considering the following factors: examining relationship; treatment relationship; consistency; specialization; and other factors which support or contradict the opinion. 20 C.F.R. § § 404.1527(d); 416.913(d). In addition, the regulations cited by the ALJ provide that the Commissioner may also use evidence from other sources to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. § § 404.1513(d), 416.913(d). The proper treatment of opinions from those sources who are not defined as "accepted medical sources" is further outlined in *Franz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007), which was cited by Plaintiff.

In *Franz*, the claimant received treatment for her mental impairments at a Veterans Administration Hospital. Much of the medical history was compromised of reports from a clinical nurse specialist (CNS) who indicated that claimant was incapable of working because of specifically listed problems. 509 F.3d at 1300-01. The ALJ in *Franz* referred to some of the evidence from the records generated by the CNS, but did not discuss what weight was given to the opinion about the severity of the claimant's limitations on her ability to work. In addition, the ALJ ignored evidence from the CNS that would support a finding of disability while highlighting evidence favorable to finding non disability. The Court referred to Social Security Ruling (SSR) 06-03p, 2006 WL 2399939 in which the Commissioner clarified how opinions from sources who are not

"acceptable medical sources" are considered. The Court found that the ALJ's treatment of the CNS records was error in part because, contrary to the instructions in SSR 06-03p, the ALJ did not explain the weight given to the sources who were not "acceptable medical sources" and the discussion of the evidence did not otherwise ensure that the reviewing court could follow the adjudicator's reasoning. *Id.* at 1302, SSR 06-03p at *6.

The situation in this case is different from that in *Franz.* The records generated by Reudy and Teel at Grand Lake Mental Health do not contain the type of statements concerning Plaintiff's abilities that would be considered opinion evidence under regulatory definition discussed above. The Grand Lake Mental Health records are not extensive; they are found in the record at Dkt. 9-11, pp. 100-131 and fourteen of those pages are duplicates. An initial screening note dated February 21, 2008, recorded Plaintiff's complaints and scheduled an assessment appointment for March 5, 2008. [Dkt. 9-11, p.131]. The March 5th appointment consists of 13 pages of forms recording intake information, an initial assessment, and treatment plan. [Dkt. 9-11, pp. 101-113, 129]. The only other Grand Lake Mental Health record is a treatment note dated March 11, 2008. [Dkt. 9-11, p. 114].

Except for the GAF[2] score of 42 which was recorded on the initial intake, [Dkt. 9-11, p. 102], Plaintiff did not identify anything within these records that contradicts the opinions expressed by the consultative examiners whose opinions were accepted by the ALJ. Since the GAF score was generated on the initial encounter, it stands on equal

---

[2] The GAF score represents Axis V of the Multiaxial Assessment system. *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 25-30 (4th Ed. 1994). The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See id.* at 25. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 30.

footing with the GAF ratings of 60 and 70 made by the consultative examiners, [Dkt. 9-11, pp. 4, 69], as an assessment made as a result of a one-time contact with Plaintiff.

The ALJ's decision explains the rationale for giving greater weight to the consultative examiners' opinions. The ALJ noted that although the opinions of Reudy and Teel were more recent, they were not "acceptable medical sources." Considering the definition of that term in the regulations, the undersigned understands the use of that term to be a comparison of the relative qualifications of Reudy and Teel, who are not doctors, to the consultative examiners, who are doctors. In view of the content of the Reudy and Teel records and the fact that they each saw Plaintiff one time, the undersigned finds that the ALJ supplied an acceptable rationale for the weight he accorded the Reudy and Teel records.

It is not accurate to say, as Plaintiff does, that mental examinations were performed by four retained professionals: Lukens, Klusman, Gordon, and Goodrich. Only Doctors Lukens and Gordon performed consultative mental examinations of Plaintiff and produced reports. [Dkt. 9-11, pp. 2, 69]. Doctors Klusman and Goodrich did not examine Plaintiff. Lawrence E. Klusman, Ph.D. completed a Mental Residual Functional Capacity Assessment and Psychological Review Technique (PRT) form dated August 8, 2006, which was based solely on a review of Plaintiff's medical record. [Dkt. 9-11, pp. 14-29]. Carolyn Goodrich, Ph.D. completed the same type or review and completed the same forms on April 17, 2007. [Dkt. 9-11, pp. 74-91]. The only place where Klusman and Goodrich differed in their assessment of Plaintiff's mental RFC was that Klusman found Plaintiff to have a moderate limitation in the ability to maintain

attention and concentration for extended periods, [Dkt. 9-11, p. 27], while Goodrich found no such limitation in that category. [Dkt. 9-11, p. 74]. The ALJ's RFC, which limited Plaintiff to performance of simple repetitive tasks is not inconsistent with the forms completed by Doctors Klusman and Goodrich. Furthermore the RFC finding is consistent with the findings of the consultative examiners.

### Credibility Analysis

The ALJ did not discount all of Plaintiff's allegations. The RFC for sedentary work at simple, repetitive tasks, and only incidental contact with the public accommodates Plaintiff's complaints of back and leg pain and social/mental difficulties. The ALJ appropriately explained his reasons for discounting Plaintiff's allegation beyond the ability to perform work at that level by noting the lack of medical findings to support the degree of impairment that he alleged. [Dkt. 9-3, p. 22]. Since the ALJ properly linked his credibility finding to the record, there is no reason to deviate from the general rule which accords deference to the ALJ's credibility determinations. See *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(factors to be considered by ALJ in assessing credibility to include extensiveness of attempts, medical or nonmedical to obtain relief and frequency of medical contacts); *James v. Chater,* 96 F.3d 1341, 1342 (10th Cir. 1996) (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

### CONCLUSION

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Further, there is

substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned RECOMMENDS that the Commissioner's decision finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before **July 28, 2010**.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 14th day of July, 2010.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

12