IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASON J. PATTERSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 09-CV-188-GKF-FHM ) |
| MICHAEL J. ASTRUE,<br>Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**O P I N I O N  A N D  O R D E R**

Before the court is the Report and Recommendation of United States Magistrate Judge Frank H. McCarthy on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Doc. No.19] and the Objections thereto filed by plaintiff, Jason J. Patterson. [Doc. No. 20].

**I. Standard of Review**

Pursuant to Fed.R.Civ.P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir.2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007). The court will "neither

reweigh the evidence nor substitute [its] judgment for that of the agency," *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)).

## II. Procedural Background

Plaintiff filed an application for disability and disability insurance benefits as well as an application for supplemental security income on February 27, 2006. Both applications alleged disability beginning January 1, 2000. The claims were denied initially on August 9, 2006, and upon reconsideration on April 23, 2007. Claimant filed a written request for a hearing on May 23, 2007. A hearing was conducted on August 1, 2008. On September 15, 2008, the Administrative Law Judge issued a Decision finding plaintiff was not entitled to benefits. [Doc. No. 9-3, Transcript, pp. 12-24 of 45]. Plaintiff filed a request for review on September 19, 2008. The Appeals Council denied the request on February 4, 2009. [*Id.,* pp. 2-4 of 45]. Plaintiff filed his appeal of the decision on April 6, 2009 [Doc. No. 2].

The Magistrate Judge recommended the decision of the Social Security Commissioner be affirmed. [Doc. No. 19]. Plaintiff timely filed his Objections to the Report and Recommendation [Doc. No. 20].

## III. Analysis

In order to determine whether a claimant is under a disability, the Secretary applies a five-step inquiry: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past

relevant work[1]; and (5) whether the impairment prevents the claimant from doing any kind of work.  20 C.F.R. §§404.1520, 416.920.  *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  If at any point in the process, the secretary finds that a person is disabled or not disabled, the review ends.  *Musgrave* at 1374.  Plaintiff asserts the ALJ erred in finding plaintiff did not meet criteria for any of the Listings of Impairment, failed to include all limitations in the Residual Function Capacity assessment and made improper credibility assessments.

### A.  Listing of Impairments

At step three of the ALJ's analysis of a disability claim, he must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listings of Impairments (Listings) describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity.  *Id*.  *All* of the specified medical criteria must be matched to meet a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 531 (1988).  Plaintiff bears the burden of showing that his impairment is equivalent to a Listing.  *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).  Moreover, the determination whether an impairment meets Listing criteria is based solely on medical findings.  20 C.F.R. §§416.925-926; *Kemp v. Bowen,*

---

[1]To make this determination, the ALJ must first determine the claimant's residual functional capacity, i.e., his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 CFR 404.1520(e) and 416.92(3).  In making this determination, the ALJ must consider all of the claimant's impairments, including those that are not severe.  20 CFR 404.152(e), 404.1545, 416.92(e) and 416.945; SSR 96-8p.  Then the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work.  20 CFR 404.1520(f) and 416.920(f).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth step.

816 F.2d 1469, 1473 (10th Cir. 1987). If the ALJ determines the impairment or impairments did not meet any of the Listings, he must discuss the evidence and the reasons for this determination. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff contends the ALJ erred in determining he does not have an impairment that meets or medically equals a listed impairment. He asserts the evidence established that he met the criteria of three listings: Listing 1.04 (disorders of the spine), Listing 12.04 (affective disorders) and Listing 12.06 (anxiety related disorders).

The ALJ, in his Decision, recited the criteria for Listing 1.04, disorders of the spine[2] and concluded:

---

[2]Listing 1.04 states:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medially acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectivel, as defined in 1.00B2b.

4

> There is no evidence of nerve root compression with motor loss, atrophy with sensory or reflex loss. There has been no diagnosis of spinal arachnoiditis and there is no evidence of spinal stenosis resulting in pseudoclaudication resulting in an inability to ambulate effectively.

[Doc. No. 9-3, p. 15 of 45]. Plaintiff argues this conclusion ignores a radiology report which demonstrated spine pathology. The report describes images of plaintiff's lumbar spine, stating:

> There is no fracture or dislocation. Early spondylosis deformans involves the margins of the bodies of L2 and L3. Modest posterior disc space narrowing with early osteophyte formation noted at L5-S1 level.
>
> Otherwise unremarkable study.
>
> Impression:
> 1. Early degenerative disease.

[Doc. No. 9-9, p. 37 of 37]. Plaintiff also cites his own testimony about back and leg pain from the hearing before the ALJ [Doc. No. 9-3, pp. 3-32, 40 of 45]; a series of "PCC Ambulatory Encounter Records" dated March 28, 2006, April 3, 2006, and April 5, 2006, in which plaintiff reported back pain [Doc. No. 9-9, pp. 3-6 of 37]; records of visits to the emergency room of the Claremore Indian Hospital on April 5 and 6, 2006, for back and leg pain [Doc. No. 9-9, pp. 34-35, 37 of 37]; a notation in a Social Security Disability Evaluation by Horace Lukins, Ph.D., with Family Medical Care Counseling Services, that the plaintiff reported "his back goes out associated with left leg numbness..." [Doc. No. 9-11, p. 3 of 131]; notes from an internal medicine examination of plaintiff on July 31, 2006, by G. Bryant Boyd, MD, in which the physician noted the plaintiff reported back and leg pain for approximately one year, as well as occasional knee and ankle pain [Doc. No. 9-11, pp. 12-13 of 131]; a physical residual functional capacity assessment which listed "low back pain" as the Primary Diagnosis, noted plaintiff had a history of low back pain and stated, "MER in file shows slight decrease in motion in the L spine, no weakness, normal

5

neuro, stable gait," and further stated, "The claimant's description of his limitations are only partially supported by the MER in file." [Doc. No. 9-11 pp. 31-32, 36 of 131]; and Consultant's Notes from a Psychiatric Review Technique in which plaintiff reported, inter alia, back and leg pain. [Doc. No. 9-11, p. 90 of 131].

None of plaintiff's citations to the Administrative Transcript provides evidence satisfying the criteria set forth in Listing 1.04. Recorded complaints or findings of radiating pain are not sufficient to meet those criteria. Therefore, the court concurs with the Magistrate Judge's finding that the ALJ did not err in concluding plaintiff did not have an impairment under Listing 1.04. Moreover, the court rejects plaintiff's argument that the ALJ should have required further development of the medical record with respect to his back problems. The ALJ has a basic obligation in every Social Security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *Henrie v. U.S. Dept. Of Health and Human Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1997). However, plaintiff cites no facts supporting his contention that an adequate record was not developed, and the court's own review of the Administrative Transcript leads it to conclude that, to the contrary, the medical record regarding plaintiff's back problems *was* adequately developed. Furthermore, as the Magistrate Judge pointed out, *Henrie* dealt with the need for development of a record regarding physical and mental demands of past work during step four of the claim analysis. *Id.*

In order to meet the criteria for either Listing 12.04 (affective disorders) or Listing 12.06 (anxiety related disorders), plaintiff was required to provide evidence of the presence of the disorder (set out in paragraph A of each Listing) *and* make a showing of at least two of the paragraph B criteria:

      1.  Marked restriction of activities of daily living;

      2.  Marked difficulties in maintaining social functioning;

      3.  Marked difficulties in maintaining concentration, persistence, or pace;

      4.  Repeated episodes of decompensation, each of an extended duration.

20 C.F.R. Pt. 404, subpt. P, App. 1, §§12.04, 12.06.  The ALJ concluded claimant's mental impairments did not meet the paragraph B criteria. [Doc. No. 9-3, Decision, pp. 18-19 of 45]. Plaintiff contends that evidence of anhedonia, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating and thoughts of suicide established not only the paragraph A requirements for presence of the disorder, but the Paragraph B criteria.  However, the paragraph A criteria "substantiate medically the *presence* of a particular mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A.  In contrast, the paragraph B criteria describe impairment-related *functional limitations* that are incompatible with the ability to do any gainful activity. *Id.* (emphasis added).  With respect to the criteria for paragraph B of both 12.04 and 12.06, the ALJ noted:

> In activities of daily living, claimant has moderate restriction.  He can get out as needed but he does not want to and he experiences difficulty when driving.
>
> In social functioning, the claimant has moderate difficulties.  The claimant can usually function around his relatives.  He has difficulty functioning around strangers; however, he is able to get out and function.  He can buy items at a store as needed.  He prefers to be alone.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant can concentrate well enough to perform his activities of daily living.
>
> As for episodes of decompensation, the claimant has experience no episodes of decompensation.  The claimant's decompensation is not for extended periods but is for the short term.  He does get out and function so he does not meet the extended criteria of this listing.

[Doc. No. 9-3, Decision, p. 18 of 45]. The ALJ concluded that because the plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the paragraph B criteria were not satisfied.

The court, having reviewed the record, agrees with the Magistrate Judge's conclusion that plaintiff has not pointed to evidence in the record demonstrating marked impairment in the activities described by the paragraph B criteria.

### B.  Residual Functional Capacity Evaluation

The ALJ found plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for performing simple, repetitive tasks and having only incidental contact with the public. [Doc. No. 9-3, Decision, p. 19 of 45].

Plaintiff contends the ALJ, in making this assessment, failed to include all of plaintiff's physical and mental limitations. With respect to his physical problems, plaintiff–citing to his own testimony at the hearing before the ALJ–contends the record contains sufficient evidence indicating limitations greater than those determined by the ALJ, including problems sitting and standing. [Doc. No.20, p. 4; Doc. No. 9-3, pp.30-32 of 45].

Having reviewed the record, the court disagrees. The ALJ, in his Decision, discussed plaintiff's objective complaints [Doc. No. 9-3, p. 20 of 45]. The court concurs with the Magistrate Judge's conclusion that the ALJ credited plaintiff's complaints of back and leg pain by limiting plaintiff to the performance of sedentary work. [Doc. No. 19, p. 6].

With respect to mental impairments, plaintiff contends the ALJ failed to give proper weight to records from the Claremore Indian Hospital [Doc. No. 20, p. 4]. The court, having reviewed the

record, finds the consideration of medical records from the Claremore Indian Hospital was adequate. With respect to these records, the ALJ noted, "the claimant was evaluated on October 27, 2005, and November 9, 2005 and was diagnosed with a mood disorder.  The medical record showed, 'Chief Complaint Suppressed for Confidentiality.'" [Doc. No. 9-3, Decision, p. 9 of 13]. Plaintiff argues various records from the hospital "discuss not only Claimant's complaints of mental problems, but also diagnoses and prescription treatment." [Doc. No. 20, p. 4].  Although the pages reveal a diagnosis of "dsythymic disorder" and indicate an anti-depressant, Prozac, was prescribed, they lack detail about the extent to which the illness caused limitations.  Therefore, the court agrees with the Magistrate Judge's conclusion regarding Claremore Indian Hospital Records.

Plaintiff also complains that the ALJ improperly accorded more weight to the opinions of consultative examiners Dr. Horace C. Lukens, Jr., Ph.D.,  and Dr. Minor Gordon, Ph.D. than to those of counselors, Katherine Reudy, B.S., P.S.R.S., and Raymond Teel, M.A., L.P.C., from Grand Lake Mental Health Center. The ALJ, noting that the Reudy and Teel opinions are not acceptable medical sources, concluded they were given "significantly less weight" than the opinions of Dr. Lukens and Dr. Gordon. [Doc. No. 9-3, Decision, pp. 22-23 of 45].  Under 20 C.F.R. §416.913(a), "acceptable medical sources" are licensed physicians, psychologists, optometrists or podiatrists and qualified speech-language pathologists.  The Tenth Circuit has held that a counselor is not an acceptable medical source. *Branum v. Barnhart,* 385 F.3d 1268, 1272 (10th Cir. 2004).  Nor do the records generated by Reudy and Teel contain the type of information that could be considered evidence from other sources that shows the severity of an impairment and how it affects the ability to work, as detailed in 20 C.F.R. §§404.1513(d), 416.913(d).  *See Frantz v. Astrue,* 509 F.3d 1299, 1301-02 (10th Cir. 2007).  As the Magistrate Judge noted, the Grand

9

Lake Mental Health Center records are not extensive; 14 of the 30 pages are duplicates. [Doc. No. 9-11, pp. 101-131 of 131]. Except for the GAF score[3] of 42, which was recorded in the initial intake, plaintiff did not identify anything in the Grand Lake Mental Health Center records that contradicts the opinions of the consultative examiners whose opinions were accepted by the ALJ. Since the GAF score was generated on the initial encounter, it stands on equal footing with the GAF ratings of 60 and 70 made by the consultative examiners [Doc. No. 9-11, pp. 4, 70]. The court concurs with the Magistrate Judge's conclusion, "In view of the content of the Reudy and Teel records and the fact that each saw plaintiff one time, the undersigned finds that the ALJ supplied an acceptable rationale for the weight accorded the Reudy and Teel records." [Doc. No. 19, p. 10]. Further, the court agrees with the Magistrate Judge's finding that the RFC, which limited plaintiff to performance of simple repetitive tasks, is supported by the evidence in the record and consistent with the findings of the consultative examiners.

### C. Credibility Analysis

Plaintiff contends the ALJ erred in his assessment of the credibility of plaintiff's subjective complaints. He contends the record supports his claims of disabling back pain, anxiety and depression.

The determination of RFC is an administrative assessment, which is based on a consideration of all evidence in the record. *See* SSR 96-5p; SSR 96-8p; 20 C.F.R. §§404.1527(e)(2) and 416.927(e)(2). The assessment is reserved solely for the ALJ. *Id.* The court may not reweigh the evidence or substitute its discretion for that of the ALJ. *Brown v.*

---

[3]The GAF rates an individual's "psychological, social, and occupational functioning." *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 30 (4th Ed. 1994).

*Bowen,* 801 F.2d 361, 362 (10th Cir. 1986); SSR 96-5p; SSR 96-8P; 20 C.F.R. §§404.1527(e)(2) and 416.927(e)(2).

The ALJ concluded the objective medical evidence did not show any significant or continuing complaint concerning the claimant's back, and that this was consistent with Dr. Boyd's examination. [Doc. No. 9-3, p. 22 of 45]. He concluded:

> The claimant's credibility is diminished significantly because the medical findings do not support his allegations concerning either his back pain or his mental impairment. His back pain did not appear in the objective medical evidence with any frequency and the findings concerning his mental impairments are overstated when compared to the objective medical evidence which was obtained by evaluating his statements.

[*Id.*]

The Magistrate Judge found–and the court agrees–that the ALJ properly linked his credibility finding to the record and, therefore, there was no reason to deviate from the general rule which accords deference to the ALJ's credibility determinations. [Doc. No. 19, p. 11]. Moreover, the RFC for sedentary work at simple, repetitive tasks and only incidental contact with the public accommodates plaintiff's complaints of back and leg pain and social anxiety and depression.

### III. Conclusion

For the reasons set forth above, the Report and Recommendation of the Magistrate Judge [Doc. No. 19] is accepted and the decision of the Social Security Commissioner denying plaintiff's applications for benefits is affirmed. Plaintiff's Objections [Doc. No. 20] are overruled.

ENTERED this 14th day of September, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

11